**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roy Earl Downey, | No. CV-24-02261-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Parties, et al., | |
| Defendants. | |

In June 2022, Roy Earl Downey and M.D., a minor (together, "Plaintiffs"), suffered injuries during a hit-and-run automobile accident involving an uninsured motorist ("UM"). (Doc. 1-1 ¶¶ 9-15.) At the time of the collision, Plaintiffs were covered by an insurance policy issued by State Farm Fire and Casualty Insurance Company ("Defendant") that provided UM benefits of $50,000 per person and $100,00 per incident. (*Id.* ¶ 11.)

Following the accident, Plaintiffs submitted a series of demands to Defendant for UM benefits but Defendant allegedly "presented lowball offers and delayed claims in an effort to get Plaintiffs to settle for less than what is reasonable under the contract." (*Id.* ¶¶ 17-26, 40.) Accordingly, in May 2024, Plaintiffs filed an action against Defendant in Maricopa County Superior Court, asserting three claims: (1) "Underinsured Motorist Claim"; (2) "Breach of Contract"; and (3) "Bad Faith." (*Id.* ¶¶ 27-43.) Afterward, Defendant timely removed the action to this Court. (Doc. 1.)

After removal, Defendant filed the motion being addressed here—a motion to compel arbitration and to dismiss or stay certain claims. (Doc. 5.) The motion is now fully

briefed.  (Docs. 6, 7.)[1]  For the reasons that follow, it is granted in part and denied in part.

**DISCUSSION**

I. Motion To Compel Arbitration

    A.  **The Arbitration Clause**

The insuring clause related to UM coverage in the policy provides: "We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle."  (Doc. 5-1 at 23, emphasis omitted.)  The policy also contains a related arbitration clause:

> **Deciding Fault and Amount**
>
> 1. The insured and we must agree to the answers to the following two questions:
>
>     a. Is the insured legally entitled to recover compensatory damages from the owner or driver of the uninsured motor vehicle; and
>
>     b. If the insured and we agree that the answer to 1.a above is yes, then what is the amount of the compensatory damages the insured is legally entitled to recover from the owner or driver of the uninsured motor vehicle?
>
> 2. ***If there is disagreement on the answers to either or both questions, then the disagreement will be resolved by arbitration upon written request of the insured or us.***  The arbitration will take place in the county in which the insured resides unless the parties agree to another location.  The insured and we will agree upon a competent and impartial arbitrator.  If the insured and we are unable to agree upon an arbitrator within 30 days, then either the insured or we may petition a court that has jurisdiction to select the arbitrator.  The arbitrator shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.  The written decision of the arbitrator that is signed by the arbitrator and that contains an explanation of the basis for the decision will be binding on: a. us; b. the insured; and c. any assignee of the insured.

---

[1]    Per Defendant's request (Doc. 5), the Court scheduled oral argument. (Doc. 10.)  In advance of oral argument, the Court issued a tentative ruling.  (Doc. 11.)  After reviewing the tentative ruling, the parties stipulated to vacate oral argument and convert the tentative ruling into this final ruling.  (Doc. 12.)

(*Id.* at 8, emphasis added.)

B.     **The Parties' Arguments**

Defendant submits evidence that between October 2022 and November 2023, the parties exchanged correspondence in which they disagreed over the amount of compensatory damages that Plaintiffs would be legally entitled to recover from the driver of the uninsured vehicle. (Docs. 5-2, 5-3, 5-4. 5-5, 5-6, 5-7.) According to Defendants, this correspondence shows that "a value dispute exists between [Defendant] and Plaintiffs over the amount of damages they are seeking to recover on their UM claims. At this point, however, there has been no determination as the amount of UM benefits owed to Plaintiffs as required by the Policy's UM insuring clause. To be clear, [Defendant] and undersigned counsel have informed Plaintiffs of the arbitration provision. Yet, Plaintiffs, presumably aware of the express requirement, elected to ignore the arbitration provision and prematurely filed suit. Given the foregoing, [Defendant] requests this Court issue an Order enforcing the written arbitration provision and directing the Parties to complete private arbitration within 240 days." (Doc. 5 at 6.)

Plaintiffs spend the bulk of their response explaining why their claims in Counts Two and Three are ripe despite the unresolved dispute over the value of the UM claim. (Doc. 6 at 1-5.) Plaintiffs' only argument as to why arbitration should be denied is that it would be "unnecessary and only a greater waste of time and resources for a claim that will still be before the court. Furthermore, the overall value determined at arbitration is immaterial to whether their offer was a lowballed or delayed claim. That is ultimately a fact question for a jury, and one the jury will still need to find even if arbitration should proceed and regardless of the result." (*Id.* at 5.)

In reply, Defendant argues that "Plaintiffs do not dispute the . . . policy contains an enforceable arbitration provision" and contends that "[e]ven assuming it made sense to allow Plaintiffs to move forward with just their bad faith claim (which it does not), Plaintiffs sole remedy to resolve the UM contract dispute is binding arbitration." (Doc. 7 at 2.)

C. **Analysis**

The Court agrees with Defendant that arbitration must be ordered as to the parties' dispute over the value of Plaintiffs' UM claim. Under the Arizona Uniform Arbitration Act ("AUAA"), "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." A.R.S. § 12-1501. "On application of a party showing an agreement described in § 12-1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party." *Id.* § 12-1502(A).

Defendant has established that the parties have a written agreement to arbitrate an existing controversy, as required under § 12-1501, and has moved for an order to compel arbitration as contemplated in § 12-1502(A). Plaintiffs, in turn, do not deny the existence of the agreement to arbitrate or otherwise question the agreement's validity.[2] Instead, Plaintiffs simply urge the Court not to order arbitration because doing so would be inefficient and not fully resolve all of Plaintiffs' claims (some of which are not subject to arbitration). The problem with this argument is that a court cannot deny a valid request to compel arbitration based on such efficiency concerns. Under § 12-1502(A), "the court *shall* order the parties to proceed with arbitration" unless the party opposing arbitration denies the existence of the arbitration agreement, which Plaintiffs have not done here. *Cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("[T]he [Federal Arbitration

---

[2] Nor could Plaintiffs raise such a validity challenge. It has long been the law in Arizona that a "policy provision requiring arbitration of claims arising under the uninsured motorist coverage provision is valid and enforceable." *Jeanes v. Arrow Ins. Co.*, 494 P.2d 1334, 1337 (Ariz. Ct. App. 1972). Additionally, although the Arizona Revised Uniform Arbitration Act ("ARUAA") does not authorize the enforcement of an arbitration agreement "[c]ontained in a contract of insurance," A.R.S. § 12-3003(B)(2), the ARUAA clarifies that such an agreement may still be enforced under the AUAA. A.R.S. § 12-3003(C) ("An agreement to arbitrate that is described in subsection B, paragraphs 2, 3 and 4 shall be governed by chapter 9, article 1 of this title.").

- 4 -

Act] requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.").[3] Accordingly, Plaintiffs must proceed to arbitration as to the narrow issue identified in the arbitration agreement: "[T]he amount of the compensatory damages the insured is legally entitled to recover from the owner or driver of the uninsured motor vehicle." (Doc. 5-1 at 8.)

II.     Motion To Dismiss Or Stay

    A.     **The Parties' Arguments**

Defendant contends that "Plaintiffs' claims for breach of contract and for breach of the covenant of good faith and fair dealing . . . are premature and not ripe" because "Plaintiffs have not yet established their legal entitlement to recovery of compensatory damages from the uninsured driver by arbitration." (Doc. 5 at 2, 6.) Citing cases from Alaska, Arkansas, and Florida, Defendant argues that "an insured's bad faith claim, as a matter of law, [is] not ripe until the liability of the tortfeasor and the extent of damages [have] been established." (*Id.* at 6-7.) Defendant concludes: "The award established by the Arbitrator will moot Plaintiffs' breach of contract claim by establishing both liability and Plaintiffs' total damages. At the conclusion of Arbitration, and after [Defendant] abides by any Arbitration Award, Plaintiffs can then exercise their option to pursue their claims for breach of the covenant of good faith and fair dealing should they wish to do so at that time. Presently, however, both claims for breach of contract and bad faith are premature. Accordingly, [Defendant] requests that the Court dismiss Plaintiffs' Complaint

---

[3] *Byrd* is instructive here because Arizona courts have stated that the AUAA should be applied in the same manner as the Federal Arbitration Act ("FAA"). *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Mgmt., Inc.*, 795 P.2d 1308, 1311 n.3 (Ariz. Ct. App. 1990) ("The language of A.R.S. § 12-1502(A) is very similar to that of 9 U.S.C. § 4 which was construed by the United States Supreme Court . . . to limit a court's inquiry to a determination of whether an enforceable arbitration clause exists."). The FAA, in turn, "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (cleaned up). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (citations omitted).

without prejudice and/or stay the claims raised therein." (*Id.* at 7-8.)

In response, Plaintiffs clarify that their breach of contract (Count Two) and bad-faith (Count Three) claims do not turn solely on the dispute over the value of the UM claim and are also based on Defendant's "failing to properly and in a timely manner offer a reasonable [amount] to compensate under the policy. Plaintiffs['] allegations arise from the egregious timeline and numerous ignored correspondences outline[d] in the Complaint." (Doc. 6 at 2.) According to Plaintiffs, "there are several ways by which an insurer can be liable for bad faith—by challenging claims that are not fairly debatable, or by failing to use reasonable care and good faith in how they go about investigating, evaluating, or processing the claim. . . . As Plaintiffs' claims arise from not only the undervaluing of the claim but also the allegations of bad faith through poor claim handling practice, Plaintiff[s'] claims are ripe and could not be dispensed with arbitration." (*Id.* at 2-3.) For these reasons, Plaintiffs contend that "any value determination that would be arrived at arbitration is a second-tier issue that is not dispositive of Plaintiffs' claims." (*Id.* at 3.) Plaintiffs conclude by arguing that, in light of the efficiency concerns raised elsewhere in their brief, Defendant's motion should be categorically denied. (*Id.* at 4.)

In reply, Defendant contends that "[t]he idea that the bad faith claim is predicated on more than the value disagreement is overstated" and that "[i]t would be a gross waste of judicial resources to allow a bad faith claim to proceed on a delay theory alone while the UM contract claim is arbitrated separately." (Doc. 7 at 2-3.) Next, Defendant reiterates its earlier arguments as to why the bad-faith claim should be deemed unripe and premature. (*Id.* at 3-4.) Next, Defendant argues that allowing an arbitration over the value of the UM claim and a separate lawsuit over the bad-faith claim to proceed at the same time would create practical problems, because "the claim file must remain protected until the conclusion of the UM arbitration as it contains, in part, [Defendant's] mental impressions related to the claims' value. . . . The disagreement over how the claim file would be produced and the necessary redactions would cause endless disagreement and waste the Court's time." (*Id.* at 4.) Finally, Defendant reiterates its request "that the Court dismiss

- 6 -

Plaintiffs' Complaint without prejudice and/or stay the bad faith claim until arbitration is complete." (*Id.* at 4-5.)

B. **Discussion**

On the one hand, Defendant has failed to establish that Counts Two and Three of the complaint are subject to dismissal on ripeness grounds. Under Arizona law, a bad-faith claim will lie where an insurer "intentionally and unreasonably denies *or delays* payment," such that "the insurer's eventual performance of the express covenant—by paying the claim—does not release it from liability for bad faith." *Rawlings v. Apodaca*, 726 P.2d 565, 572. 575 (Ariz. 1986) (emphasis added). *See also Zilisch v. State Farm Mutual Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000) ("[C]oming up with an amount that is within the range of possibility is not an absolute defense to a bad faith case. The carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. It cannot lowball claims or delay claims hoping that the insured will settle for less. Equal consideration of the insured requires more than that. The court of appeals therefore erred in concluding that fair debatability is both the beginning and the end of the analysis."). Here, the bad-faith claim in Count Three is based in part on the allegation that "Defendant presented lowball offers and delayed claims in an effort to get Plaintiffs to settle for less than what is reasonable under the contract." (Doc. 1-1 ¶ 40.) Thus, it may be possible for Plaintiffs to prevail on that claim even if they do not prevail in the arbitration over the disputed value of the UM claim.

The analysis is likely the same as to Count Two, which is Plaintiffs' claim for "Breach of Contract." (*Id.* ¶¶ 34-36.) Although Defendant characterizes Count Two as a contract claim premised solely on its alleged failure to pay to full amount of UM benefits to which Plaintiffs believe they are entitled, Plaintiffs clarify in their response brief that Count Two is not limited in this fashion and is also based on Defendant's alleged delay in

- 7 -

processing their claims, which sounds in contract because it implicates the implied covenant of good faith and fair dealing. (Doc. 6 at 2-3 ["[Not acting in bad faith] is an implied contractual covenant but an element of the contract nonetheless, and one that is separate from the value of the claim."].)

On the other hand, even though Defendant has not demonstrated that it is entitled to dismissal of Counts Two and Three at this stage of the case, Defendant also makes an alternative request for relief—that this case be stayed pending the resolution of the arbitration. Plaintiffs do not directly address this stay request in the response brief. This omission likely constitutes a forfeiture, and at any rate the Court agrees with Defendant that a stay is warranted under these circumstances. Under A.R.S. § 12-1502(D), "[a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay." Here, because the issue to be arbitrated—the value of the UM claim—is intertwined with the merits of all of Plaintiffs' claims, it makes particular sense to stay those claims until the arbitration is completed. *Cf. Moore v. Farm Bureau Prop. & Cas. Ins. Co.*, 993 F. Supp. 2d 1039, 1040-41 (D. Ariz. 2014) (granting motion to compel arbitration as to "whether the umbrella policy extends to the UIM module" and agreeing to "Stay Litigation" pending the resolution of the arbitration); *Palozie v. State Farm Mut. Auto. Ins.*, 1996 WL 814533, *8 (D. Ariz. 1996) ("[B]ecause the Court must compel appraisal to determine the value of Plaintiff's car, it must also stay the litigation concerning Plaintiff's breach of contract claim seeking the value of the car. . . . [Also,] because Plaintiff's bad faith claims are based on the manner in which Defendant conducts appraisals, the actual conduct of the appraisal and whether Plaintiff prevails in the appraisal could affect Plaintiff's bad faith claims . . . [and] the value determined by the appraisal panel may be, in part, a basis for determining whether and to what extent Plaintiff has been damaged. Hence, staying the nonarbitrable bad faith claims will prevent prejudice to either party . . . .").

Accordingly,

**IT IS ORDERED** that:

1. Defendant's motion to stay and to dismiss or stay (Doc. 5) is **granted in part and denied in part**.

2. Plaintiffs are ordered, pursuant to the arbitration clause in the insurance policy, to arbitrate the following issue: "[T]he amount of the compensatory damages the insured is legally entitled to recover from the owner or driver of the uninsured motor vehicle." (Doc. 5-1 at 8.)

3. This action is **stayed** pending the resolution of the arbitration proceeding.

4. Within 10 days of the completion of the arbitration proceeding, the parties must file a joint status report indicating how they wish to proceed.

Dated this 17th day of October, 2024.

Dominic W. Lanza
United States District Judge